CENTER FOR DISABILITY ACCESS
Raymond G. Ballister, Jr. SBN 111282
Mark Potter, SBN 166317
Phyl Grace, Esq. SBN 171771
Mail: PO Box 262490
      San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
      San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
Phylg @ potterhandy.com
      Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Samuel Love**,<br><br>         Plaintiff,<br><br>    v.<br><br>**Guillermo Ocampo;<br>Rebeca Ocampo;** and<br>**Gibson Brothers Janitorial<br>Service, Inc.,** a California<br>Corporation,<br><br>         Defendants. | **Case No**. 5:15-CV-00002-JGB-SP<br><br>**Memorandum of Points and<br>Authorities in Support of Plaintiff's<br>Motion for An Award of Attorney's<br>Fees and Litigation Expenses**<br><br>Date:   December 7, 2015<br>Time:   9:00 a.m.<br>Ctrm:   1<br><br>Honorable Judge Jesus G. Bernal |

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................1

II. HISTORY OF SETTLEMENT NEGOTIATIONS ..............................1

III. REASONABLENESS OF FEES .......................................................2

    A. Hourly Rates ........................................................................3

    B. Hours Reasonably Expended..............................................7

IV. HENSLEY FACTORS .......................................................................8

    A. Time and Labor Required...................................................9

    B. Novelty and Difficulty of Issues ........................................9

    C. Skill Required to Perform Legal Service .........................9

    D. Preclusion of Other Work.................................................10

    E. Customary Fee ..................................................................10

    F. Fixed or Contingent Fee ...................................................11

    G. Time Limitations ..............................................................11

    H. Amount Involved and Results Obtained.......................11

    I. Experience and Ability of Attorneys..............................11

    J. Undesirability of the Case ...............................................11

    K. Nature and Length of Professional Relationship with Client................................................................................12

    L. Awards in Similar Cases. .................................................12

V. CONCLUSION ................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Blackwell v. Foley*,
　724 F. Supp. 2d 1068 (N.D. Cal. 2010) .............................................. 3, 7

*City of Sacramento v. Drew*,
　207 Cal. App. 3d 1287 (1989) ................................................................2

*Copeland v. Marshall*,
　641 F.2d 880 (1980) ................................................................................8

*Hansen v. Deercreek Plaza, LLC*,
　420 F.Supp.2d 1346 (S.D.Fla 2006) .................................................. 6, 7

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983) ....................................................................... 2, 3, 8

*Jankey v. Poop Deck*,
　537 F.3d 1122 (9th Cir. 2008) ................................................................2

*Lindy Bros. Builders, Inc. of Phila. v. American Radiator*,
　487 F.2d 161 (3rd Cir 1973) ...................................................................8

*Lovell v. Chandler*
　(9th Cir. 2002) 303 F.3d 1039 ............................................................ 12

*Margolin v. Regional Planning Comm'n*,
　134 Cal.App.3d 999 (1982) ....................................................................6

*PLCM Group, Inc. v. Drexler*,
　22 Cal.4th 1084 (2000) ...........................................................................3

*San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino*,
　155 Cal.App.3d 738 (1984) ....................................................................2

*Serrano v. Priest*,
　20 Cal.3d 25 (1977) ................................................................................8

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
　896 F.2d 403 (9th Cir. 1990) .................................................................6

*Van Gerwen v. Guarantee Mutual Life*,
   214 F.3d 1041 (9th Cir. 2000) .................................................................. 9
*Wehr v. Burroughs Corp.*,
   477 F.Supp. 1012 (E.D.Pa. 1979) ........................................................... 3
*Welch v. Metropolitan Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) .................................................................. 3
*Woodland Hills Residents Ass'n., Inc. v. City Council*,
   23 Cal.3d 917 (1979) ............................................................................... 2

**Statutes**

42 U.S.C. § 12205 ........................................................................................ 3, 15

## I. PRELIMINARY STATEMENT

Mr. Love is a person with a disability. He is a paraplegic who sued the defendants for failure to provide accessible parking and paths of travel at their store. The defendants refused to engage in settlement discussions in this case and declared, repeatedly, that the only way that the case would be resolved was by trial or judgment. On October 20, 2015, this Court granted the plaintiff's motion for summary judgment and entered judgment for the plaintiff. *See* ECF Entry 51. The plaintiff now files his motion for an award of attorney's fees.

## II. HISTORY OF SETTLEMENT NEGOTIATIONS

On January 16, 2015, defense counsel made his first appearance in the case and informed plaintiff's counsel that his client would *never pay a single penny* in settlement, that he would take this case to trial, and that he would work over the plaintiff in a deposition. *See* Exhibit 3 (Defense Email dated 1-16-15). Defense counsel was serious about his claim. His only offer for settlement was during a meet and confer over motions for summary judgment on July 30, 2015 where he offered $333.33 to settle the case. The plaintiff wrote an email documenting the remarkable offer and countering with a demand for $3,000 in damages plus reasonable attorney's fees. *See* Exhibit 4 (Plaintiff's Email dated 7-30-15). The defense promptly responded and gave a final number of $1,000 total to settle the case. Moreover, he called this offer an "inflexible number" and stated that there was no reason to even counter the offer because he would not even deign to respond. *See* Exhibit 5 (Defense Email dated 7-30-15).

Ultimately, the plaintiff established the merit of his case and secured a determination that the defendants had violated the law,

obtaining a judgment of $4,000. There can be little doubt that the plaintiff's settlement posture was reasonable and the defense settlement posture was not.

### III.   REASONABLENESS OF FEES

Under the American with Disabilities Act, attorney's fees are available to a prevailing party. 42 U.S.C. § 12205. Successful litigants are entitled to reasonable attorney fees "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Consequently, recovery is the rule rather than the exception." *Jankey v. Poop Deck*, 537 F.3d 1122, 1131 (9th Cir. 2008) (internal citations omitted).

This is a civil right entitlement, not a windfall. "It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right." *City of Sacramento v. Drew*, 207 Cal. App. 3d 1287, 1304 (1989).

The "fundamental objective" of attorney fee statutes is "to encourage suits effectuating a strong policy by awarding **substantial attorney's fees** ... to those who successfully bring such suits . . .." *Woodland Hills Residents Ass'n., Inc. v. City Council*, 23 Cal.3d 917, 933 (1979) (emphasis added). To accomplish this, the award must be large enough "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino*, 155 Cal.App.3d 738, 755 (1984). Thus, there is a "requirement of an award of substantial attorney fees" in these disability

access civil rights cases. *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1076 (N.D. Cal. 2010) (a disability access case involving both the ADA and Unruh Civil Rights Act).

The documentation submitted in support of a request for attorney fees should be sufficient to satisfy the court, or indeed a client, that the hours expended were actual, non-duplicative and reasonable and to appraise the court of the nature of the activity and the claim on which the hours were spent. *See Hensley*, 461 U.S. at 437; *Wehr v. Burroughs Corp.*, 477 F.Supp. 1012, 1016–18 (E.D.Pa. 1979), *modified on other grounds* at *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3rd Cir. 1980). The billing statements attached as exhibit 2 meet this standard.

### A.   Hourly Rates

A reasonable hourly rate reflects the skill and experience of the lawyer, including any relevant areas of particular expertise, and the nature of the work performed. *See Hensley*, 461 U.S. at 433-34. The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1094 (2000). This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represented the client on a straight contingent fee basis, or are in house counsel. *Id.*; *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

In this case, Mr. Potter and Mr. Ballister charge $425 per hour for their ADA work, Ms. Grace charges $350 per hour, and both Mr. Price and Ms. Lockhart charges $200 per hour.

Mark Potter founded the Center for Disability Access, has devoted more than 95% of his practice to disability issues for almost 20 years. He

was a former officer of the California's for Disability Rights, Chapter Number One—the oldest and most prestigious disability civil rights advocacy organization in California, as well as a board member of the prestigious Southern California Rehabilitation Services. He has given ADA seminars throughout the state of California and published in numerous disabled rights periodicals. He has litigated over 2,000 disability cases. His expertise and experience with ADA cases is almost unparalleled in California. He has been interviewed on CNN as an ADA legal expert.

Attorney Ray Ballister has been in practice for 29 years. He has prosecuted over a thousand disability access cases and has tremendous trial experience. He has taken and defendant hundreds and hundreds of depositions, attended thousands of hearings, has an extensive trial record. For the last nine years, Mr. Ballister has focused exclusively on disability access cases.

Phyl Grace has been practicing for twenty years. She has focused exclusively on disability access litigation for the last nine years. She has handled trials, taken depositions, drafted motions, and otherwise litigated these civil rights cases exclusively for seven years.

Attorney Dennis Price is qualified to bill at $250 per hour. He graduated from Loyola Law School in 2011. While in law school he participated in the Moot Court Honors Board and competed on the Loyola Appellate National Team. He spent a year clerking for the California Court of Appeal. Since passing the bar he worked for a renowned public interest firm representing Los Angeles County senior citizens in a wide-range of legal issues before coming to the Center for Disability Access. He has written and argued cases before the California Court of Appeal and participated in prosecuting well over a hundred ADA

cases in state and federals courts with responsibilities ranging from conducting depositions, settlement negotiations, drafting and arguing motions and seeing multiple cases through trial.

Attorney Amanda Lockhart is qualified to bill at $200 per hour. Ms. Lockhart graduated from California Western School of Law in 2011. While in law school, Ms. Lockhart served as an elected member of the Student Bar Association and as a staff writer for the school's newspaper, The Commentary. Ms. Lockhart excelled at oral advocacy, earning the title of 'Distinguished Advocate' for her appellate oral advocacy skills. She also earned an 'Am Jur' award in the invitation-only Advanced Appellate Skills class. Ms. Lockhart has clerked for a celebrated private firm, handling matters including a multi-state elder abuse case as well as a case involving novel theories of fraud and negligence as they relate to international surrogacy agreements. Ms. Lockhart also served as a student liaison for the Dean of Admissions.

Plaintiff's attorneys' disability rights work has helped to shape ADA law with numerous, precedent setting opinions including, but not limited to the following published cases: *Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir. 2014); *Cortez v. City of Porterville*, 5 F.Supp.3rd 1160 (E.D. Cal. 2014); *Johnson v. Wayside Prop., Inc.*, 41 F.Supp.2d 973 (E.D. Cal. 2014); *Daubert v. City of Lindsay*, 37 F.Supp.2d 1168 (E.D. Cal. 2014); *Munson v. Del Taco, Inc.*, 46 Cal.4th 66 (2009); *Nicholls v. Holiday Panay Marina, L.P.*, 93 Cal.Rptr.3d 309 (2009); *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159 (S.D. Cal. 2009); *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953 (C.D. Cal. 2009); *Deanda v. Sav. Inv., Inc.*, 267 F. App'x 675, 676 (9th Cir. 2008); *Miller v. California Speedway Corp.* (9th Cir. 2008) 536 F.3d 1010; *Munson v. Del Taco, Inc.*, 522 F.3d 997 (9th Cir. 2008); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126 (C.D. Cal. 2005); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir.

2004); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002); *Wyatt v. Ralphs Grocery Co.*, 65 Fed.Appx. 589 (9th Cir. 2003); *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000); *Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062 (C.D. Cal. 2000).

Rates awarded to the claiming attorneys in previous actions are good evidence of the appropriate market rate. *See e.g. Margolin v. Regional Planning Comm'n*, 134 Cal.App.3d 999, 1005 (1982) (where the court rejected defendants' argument that rates awarded plaintiff's counsel in prior litigation were not relevant, stating that court awards are "obviously relevant" and that the "most analogous evidence" would be fees sought and deemed reasonable by courts in other cases."). Also, in *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990), the court held, "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." In *Hansen v. Deercreek Plaza, LLC*, 420 F.Supp.2d 1346, 1350 (S.D.Fla 2006), the court held that previous fee rulings for the fee applicant for comparable cases is "satisfactory evidence" in an ADA case.

Fortunately, plaintiff's attorneys have prosecuted two fee motions this year in front of the Honorable Judge Jesus Bernal and, therefore, this Court is familiar with the evidence and has made previous determinations about the reasonable hourly rate of plaintiff's attorneys. On May 4, 2015, this Court awarded plaintiff's counsel $124,865.00 in attorney's fees and litigation expenses following an ADA trial, approving of the plaintiff's attorney's requested rates. *See* Exhibit 6 (Coppi Award). On October 1, 2015, this Court awarded plaintiff's counsel $20,612.50 in attorney's fees and litigation expenses following the grant of plaintiff's

motion for summary judgment, approving of the plaintiff's attorney's requested rates. *See* Exhibit 7 (Elguezabal Award).

Not only are plaintiff's counsel's rates fully consistent within their market but they should expect to receive full compensation. Both state and federal law advocates for full and substantial compensation for disability civil rights attorneys:

> Per statutory provisions by the United States Congress and the California Legislature to ensure that there are attorneys willing to perform the important function of securing the rights of disabled persons to "full participation in the social and economic life of the state" and to "full and equal access," it is necessary to provide substantial compensation for this work. Encouraging competent attorneys to handle ADA Title III cases is necessary for effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion, held that California building officials could not independently enforce the ADA, and that enforcement was left primarily to private lawsuits.

*Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010). "Indeed, were it not for the efforts of those attorneys willing to undertake the representation of ADA plaintiffs, there would be little, if any, enforcement of this landmark statute." *Hansen v. Deercreek Plaza, LLC*, 420 F.Supp.2d 1346, 1349 (S.D.Fla. 2006).

### B.   Hours Reasonably Expended

As the first step in the calculation of an equitable award, the Court should determine the number of hours reasonably expended in this litigation: The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorneys, must be a calculation of the attorneys' services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only approach that can claim objectivity, a claim which is 'obviously vital' to the prestige of the bar and the courts." *Serrano v. Priest*, 20 Cal.3d 25, 49

(1977), *citing Lindy Bros. Builders, Inc. of Phila. v. American Radiator*, 487 F.2d 161 (3rd Cir 1973).

Furthermore, only hours found to have been reasonably expended may be allowed. Plaintiff is not entitled to an award of attorney's fees for hours which were duplicative, unproductive, excessive or otherwise unnecessary. *Hensley*, 461 U.S. at 434. A fee applicant must exercise "billing judgment" in the preparation of the attorney's fee application; '[h]ours not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority". *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original), *quoted* in *Hensley*, 461 U.S. at 484. A fair award is the product of reasonable hours and reasonable rates, and represents an objective basis for an initial determination of attorney's fees.

This case reasonably and necessarily involved pre-filing investigation, complaint drafting, emails, letters, phone conversations, discovery, expert work, court filings, court hearings, site visits, motions to consolidate and for stay, cross motions for summary judgment, this current fee motion and the other trappings of a litigated case. Plaintiff's attorneys will have expended about 74 hours when this fee motion is argued. As is obvious from the billing statement (exhibit 2), there has been no overbilling in this case. All of the hours submitted to the court in the accompanying declaration of Mark Potter and the attached billing were reasonably incurred in the prosecution of this case.

## IV.  HENSLEY FACTORS

In *Hensley v. Eckerhart*, (1983) 461 U.S. 424, the Supreme Court stated that the lodestar is the "presumptively reasonable fee amount" and that the Court can adjust upward or downward by a multiplier in "rare" or

"exceptional" cases only. *Id.* at 433; *Van Gerwen v. Guarantee Mutual Life*, 214 F.3d 1041, 1045 (9th Cir. 2000); *see also Welch*, 480 F.3d at 946. Additionally, the *Hensley* court outlined twelve factors that a Court may consider when determining the appropriate fee award or any departure from it. Many of the factors are already subsumed into the lodestar discussion but plaintiff will briefly discuss each factor. Plaintiff seeks no modification of the lodestar.

### A. Time and Labor Required

As stated above, the plaintiff showed billing judgment and restraint. The case was not over litigated. The plaintiff seeks no multiplier as the time expended will be compensated by the lodestar.

### B. Novelty and Difficulty of Issues

The Americans with Disabilities Act itself and its interaction with California State Law is ever evolving and involves new issues and new challenges on a constant basis. Aside from the fairly novel area of Americans with Disabilities Act work in general, this case presented no significant legal issues of first impression and plaintiff seeks no multiplier based on this issue.

### C. Skill Required to Perform Legal Service

The Americans with Disabilities Act was passed in 1990 and the Unruh Civil Rights Act was amended in 1992 to incorporate the ADA. There are only a handful of attorneys with expertise in the area. Access under Title II of the Americans with Disabilities Act is predicated upon requirements to provide programmatic access to existing programs and the facilities of public entities. Those requirements turn on a plethora of

federal regulations, Department of Justice advisory opinions, interpretive manuals and case law that is argued by both plaintiffs and defendants as to what constitutes the enforceable regulations and the extent of the remedial measures necessary, if any, to provide programmatic access. A successful prosecution of disability access cases is dependent upon a plaintiff's attorney having a thorough knowledge of the ADA and all its implementing regulations, Americans with Disabilities Act Accessibility Guidelines, Title 24 of the California Code of Regulations, and ANSI standards. In addition, an intimacy with the body of case law which has developed around the ADA (among which over two dozen published decisions were handled by plaintiff's counsel's office) and state statutory schemes, and the ability to couple this knowledge with a practical, strategic approach to interfacing with defendants, their own personal counsel, and the Court is absolutely essential.

In short, handling disability access cases demand the services of an attorney trained and specializing in the area of law.

### D.    Preclusion of Other Work

Plaintiff's attorneys will have spent more than 74 hours in prosecuting this case. That time could not be used, simultaneously, for other cases or other clients. Thus, the work on this case precluded other work that could have and would have been done and billed for. Nonetheless, the lodestar fully compensates for that work.

### E.    Customary Fee

As covered above, the rates and fees charged by plaintiff's counsel are market rates.

### F.     Fixed or Contingent Fee

As is the case with virtually all civil rights cases, the fees in this case were contingent upon prevailing. Had the plaintiff not prevailed, the plaintiff's attorneys would not be able to recover monies to compensate them for the outlay of time spent in prosecuting this case. Nonetheless, plaintiff's counsel is not seeking a multiplier.

### G.     Time Limitations

There were no unique time limitations imposed by either the client or the circumstances.

### H.     Amount Involved and Results Obtained

Upon being sued by the plaintiff, the defense hired a Certified Access Specialist and undertook numerous modifications to its property to comply with the ADA – obligations that had been on the books for twenty five years. Moreover, the plaintiff obtained a $4,000 judgment. Given that this is the very amount contemplated by the Unruh Civil Rights Act for a single encounter (and the amount identified in the complaint), the plaintiff obtained everything he could have reasonably hoped for.

### I.     Experience and Ability of Attorneys

See discussion under "Hourly Rates" above.

### J.     Undesirability of the Case

This case, like many small dollar civil rights cases, is low on the desirability scale. The clientele is largely (as in the present case) very low income or indigent. Payment is completely dependent upon winning. It is

usually big business, Cities, Counties and/or insurance companies on the other side.

### K. Nature and Length of Professional Relationship with Client

The Center for Disability Access has no relationship with Mr. Love other than prosecuting his ADA/Unruh claims.

### L. Awards in Similar Cases.

This matter is discussed above.

## V. LITIGATION COSTS

The plaintiff Court seeks $200 in investigation costs. Section 505 of the Americans with Disabilities Act (42 U.S.C. § 12205) authorizes reasonable attorney's fees, including "litigation expenses and costs," in any action brought under the Act. This includes all costs normally associated with litigation including investigative costs:

> According to committee reports, Congress included the term "litigation expenses" in order to authorize a court to shift costs such as **expert witness fees**, travel expenses, and the preparation of exhibits. See H.R. Rpt. No. 101-485(III) at 73, reprinted in 1990 U.S.C.C.A.N. 445, 496 (Report of the Committee on the Judiciary) ("Litigation expenses include the costs of expert witnesses. This provision explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision."); H.R. Rpt. No. 101-485(II) at 140, reprinted in 1990 U.S.C.C.A.N. 303, 423 (Report of the Committee on Education and Labor) ("Litigation expenses include the costs of experts and the preparation of exhibits.").

*Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (emphasis added). "The federal statute, unlike the state statutes, explicitly provides

for not only attorney's fees but also litigation expenses and costs." *Saldana-Neily v. Taco Bell of Am., Inc.*, 2008 WL 793872, *3 (N.D. Cal. 2008).

## VI. CONCLUSION

The plaintiff respectfully requests that his motion be granted and he be awarded $29,457.50.

Dated: November 3, 2015

Center for Disability Access
    /s/ Mark Potter
By:_____
Mark Potter, Esq.
Attorneys for Plaintiff