1  MICHAEL A. SCAFIDDI, ESQ., (SBN: 188567)
   GARY HARRISON, ESQ., (SBN: 158421)
2  LAW OFFICES OF MICHAEL A. SCAFIDDI, INC.
   432 N. Arrowhead Ave.
3  San Bernardino, CA 92401
   Telephone: (909) 381-1000
4  Facsimile: (909) 381-1077

5  Attorneys for Defendants: Guillermo Ocampo; Rebecca Ocampo; Gibson
   Brothers Janitorial Service

6

7

8              UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
9                  RIVERSIDE DIVISION

10 Samuel Love,                    ) CASE NO: 5:15-cv-00002-JGB(SPx)
   Plaintiff,                      )
11            vs.                  ) MEMORANDUM OPPOSING FEE
                                   ) MOTION
12                                 )      United States District Court
   Guillermo Ocampo;              )      3420 Twelfth Street,
13 Rebeca Ocampo; Gibson Brothers ) Riverside, California 92501-3819
   Janitorial Service, Inc., a California ) Telephone  (951) 774-1000
14 Corporation; and Does 1-10     )      Complaint filed: 1/6/2015
           Defendants.            )
15                                 )      Hearing Date: 12/07/2015
                                   )      Hon. Jesus G. Bernal
16 _____ )

17        Comes now, Defendants and each of them, who respectfully submit this

18 Memorandum of Points and Authorities in opposition to the Plaintiff's Motion

19 for Attorney's Fees.

20 ///

21 ///

22 ///

23

24

25

26

27

28            **Memorandum of Points and Authorities Opposing Fee Motion**                    I

1

TABLE OF CONTENTS

2   Content         Page Number

3  Preliminary Statement       -a-

4  Argument 1          1

5  THE REQUESTED AWARD SHOCKS
   THE CONSCIENCE AND
6  IS NOT REASONABLE

7  1A.  Defendants Concede Plaintiff is Entitled  1
  to a Reasonable Fee Award.
8
   1B.  The Requested Fees Must be Reasonable.  1
9
   1C.  Fees Must Not Produce Windfalls   4
10     to Attorneys.

11  Argument 2          6

12  THE MIDDLE DISTRICT OF FLORIDA
   STATED THEY WOULD REFUSE FEE
13  AWARDS TO PREVAILING PARTY SERIAL
   FILERS OF ADA CLAIMS
14

   Argument 3          6
15
   THE COURT MUST APPLY THE KERR
16  FACTORS TO DETERMINE THE LODESTAR
   AND THEN ADJUST PER THE FACTORS
17
   3A.  Application of the Kerr Factors Compels  7
18     Reduction.

19  3B.  The $425.00 Hourly Rate Requested for  8
  Potter and Ballister and the $350.00 Per Hour for
20  Phyl Grace Are Not Reasonable Because Those Rates
  Are Not Based on What Fee Paying Clients Pay.
21
   Conclusion         11
22
///
23 ///
  ///

24

25

26

27

28    **Memorandum of Points and Authorities Opposing Fee Motion**  -i-

1

## Preliminary Statement

2     In his application, Plaintiffs' attorney, Potter and Handy, requests over

3 $29,000.00 for his fees and costs. Defendants do not dispute that the Plaintiff is

4 entitled to a reasonable attorney's fee. However, Defendants believe that the fee

5 request is grossly inflated, that the hourly rates of three (3) of the five (5)

6 attorneys who worked on the case are too high. As explained herein, Defendant

7 contends that **$ 9,535.00** plus reasonable time for Reply to this Opposition is the

8 correct amount of Plaintiff's Attorney's fees based on the Kerr factors.

9     Defendants have concurrently filed a  Table of Specific Objections with a

10 line by line analysis of the Plaintiff's requested fees. The Plaintiff is a

11 professional litigant. According to the Declaration of Guillermo Ocampo filed in

12 Opposition to the Motion for Summary Judgment, (EC-35:2, paragraphs 7-12)

13 and has filed about 134 lawsuits mostly in this District. The Declaration of Mark

14 Potter filed in support of the instant motion states that he has been counsel of

15 record in over 3,000 ADA cases. The other counsel submitting billing are alleged

16 to be similarly qualified.

17     The Declaration of Gary Harrison filed concurrently in support of this

18 Opposition confirms that the same pleadings and discovery, including the

19 Complaint, Rule 26 Disclosures, Special Interrogatories, Requests for

20 Admissions, Requests for Production, Motion for Summary Judgment, Statement

21 of Undisputed Facts, Memorandum, Declaration of Paul Bishop, Declaration of

22 Samuel Love, Responses to Defendant's Motion for Summary Judgment and all

23 pleadings relating to the Plaintiff's Motion for Attorney's Fees have been used in

24 many similar cases.

25     Further, Defendant did not propound any discovery. Defendants responses

26 to Plaintiff's discovery were all timely. No extensions were sought. All responses

27

28

1   were accepted as complete and no meet and confer letters regarding discovery

2   were sent. No depositions were taken by either side. No site inspection was

3   conducted. This was, for such an experienced ADA litigator as plaintiff and his

4   counsel, a very routine case. Given the boiler plate nature of the case and the

5   routine issues litigated, the time that Plaintiff's counsel allege they spent and the

6   hourly rates claimed are unreasonable. Their rates are skewed because they are

7   not the rates charged to fee paying clients. They are rates set for the purpose of

8   obtaining fee awards and as such are not a reasonable measure of the value of

9   their services. Defendants rates and total fees charged in a very similar case

10   where Defendant is seeking fees from Plaintiff for alleged bad faith fees (see

11   Love vs. Ocampo, 5:15-cv-00034) and Defendant's fees charged here are a more

12   accurate measure of fees charged to fee paying clients with similar cases.

13       As to the conduct of the case, the Defendants did not propound any

14   discovery, the Plaintiff used identical forms for the Rule 26 exchanges in all

15   three (3) cases in which Harrison is counsel and in many additional cases that

16   Harrison reviewed as noted in his Declaration.

17       Courts in this District have identified and harshly commented on the

18   scheme that this Plaintiff and his counsel conduct to, as the cases say "bilk small

19   businesses" on marginal ADA claims serially filed on a mass scale. The Ninth

20   Circuit has found lack of standing based on such serial filing and also has found

21   similar litigators to be vexatious. Courts in other Circuits have greatly reduced or

22   declined to exercise their discretion to award fees to these serial filers of boiler

23   plate cases on a mass scale.

24       While there is no question of the Plaintiff's right to seek fees, cases

25   discussed in this Memorandum demonstrate that the fees requested must be

26   reasonable and can be reduced to a reasonable rate based on what fee paying

27

28            **Memorandum of Points and Authorities Opposing Fee Motion**     -b-

1   clients, not victims, would pay. The award should not allow the fees objected to

2   in the Table of Specific Objections filed concurrently. Further, the court should

3   consider the serial filings and mill like process of cases that are more concerned

4   with obtaining fee awards than with enforcing the victims rights and that this was

5   a routine case with pleadings that were used many times before in almost

6   identical form, diminishing the actual time that the Plaintiff's counsel had to

7   spend to prosecute this case.

8   ///

9   ///

10   ///

MEMORANDUM OR POINTS AND AUTHORITIES

Argument 1

### THE REQUESTED AWARD SHOCKS THE CONSCIENCE AND IS NOT REASONABLE

1A.   Defendants Concede Plaintiff is Entitled to a Reasonable Fee Award.

Plaintiff is entitled to request a fee award as prevailing party and the court has discretion over the granting of the award and the amount if granted. 42 U.S.C. sec. 12205 states:

> "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, **in its discretion, may** allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual." *42 U.S.C. 12205*

Absent exigent circumstances an award of fees for the Plaintiff is ordinarily allowed. The United States Supreme Court held:

> It can thus be taken as established, as the parties in this case both acknowledge, that under § 706 (k) of Title VII a prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances. *Christiansburg Garment Co. v. EEOC*, 434 US 412, 417 - Supreme Court 1978

1B.   The Requested Fees Must be Reasonable.

This District has recognized the abusive nature of the lawsuits such as this, calling them "shakedown schemes." This District looked at the practices, followed precisely here, in the context of standing under the ADA in *Harris v. Stonecrest Care Auto Center, LLC*, 472 F. Supp. 2d 1208 - Dist. Court, SD California (2007) which states:

> "Relevance of Multiple Lawsuits

> "As noted, Plaintiff has filed many Title III lawsuits — indeed, more than he can remember. **The widespread practice of filing large numbers of lawsuits under Title III and joining state law claims for damages has drawn the notice and commentary of a number of courts.** See, e.g., Doran v. Del Taco, Inc., 373 F.Supp.2d 1028, 1030 (C.D.Cal.2005)

(discussing and commenting on abusive "**shakedown schemes**"); Rodriguez v. Investco, LLC, 305 F.Supp.2d 1278, 1280-82 (M.D.Fla. 2004) (referring to ADA plaintiff as a "**professional pawn in an ongoing scheme to bilk attorney's fees**"); Steven Brother, 331 F.Supp.2d at 1375 (calling for a legislative solution to the unchecked potential for vexatious ADA litigation).

"California courts, too, have commented on the readiness of some plaintiffs and their counsel to abuse state law provisions intended to protect disabled persons from discrimination.

"The abuse is a kind of legal shakedown scheme: Attorneys form a front "watchdog" or "consumer" organization. They scour public records on the Internet for what are often ridiculously minor violations of some regulation or law by a small business, and sue that business in the name of the front organization. Since even frivolous lawsuits can have economic nuisance value, the attorneys then contact the business **(often owned by immigrants for whom English is a second language**), and point out that a quick settlement (usually around a few thousand dollars) would be in the business's long-term interest.People ex rel. Lockyer v. Brar, 115 Cal. App.4th 1315, 1317, 9 Cal.Rptr.3d 844 (Cal. App. 4 Dist.2004).

"**The Court notes that this pattern of litigation, in order to be profitable to a law firm, requires high volume, which can, at times, be abusive**. See Molski v. Mandarin Touch Restaurant, 347 F.Supp.2d 860, 866-67 (C.D.Cal.2004) (Mandarin Touch I) (referring to plaintiff's high-volume "shotgun litigation" tactics); Doran, 373 F.Supp.2d at 1030 (in abusive ADA litigation, "[a]n **unscrupulous** law firm sends a disabled individual to as many businesses as possible in order to have him or her aggressively seek out all violations of the ADA.") Typically, in abusive litigation, a plaintiff files suit, extracts a cash settlement, and loses all interest in the defendant's future compliance with the ADA. Mandarin Touch I, 347 F.Supp.2d at 866 (litigant's modus operandi was "sue, settle, and move on to the next suit"). Such practices represent an end-run around the ADA's limitations on remedies. Doran, 373 F.Supp.2d at 1030 ("**Enterprising plaintiffs and their attorneys have found a way to circumvent the will of Congress by seeking money damages while retaining federal jurisdiction**.") Furthermore, because the plaintiff in such cases is **focused on a short-term** reward, the ADA action provides **little, if any**, long-term assistance to disabled persons generally who genuinely wish to patronize local businesses. Id. (observing that in abusive ADA litigation, **monetary awards have become more important than access for disabled persons**, which has undermined both the spirit and purpose of the ADA) (quoting Mandarin Touch I, 347 F.Supp.2d at 863).

"..."**ADA claims in that case may be a sham, used as a pretext to gain access to the federal courts while pursuing state law remedies**")." *Harris v. Stonecrest Care Auto Center, LLC*, 472 F. Supp. 2d 1208, 1214-1215 - Dist. Court, SD California (2007)

This Circuit has examined both sides of the serial filing scheme in the

context of vexatious litigation. In *Molski v. Evergreen Dynasty Corp.*, 500 F. 3d 1047, 1061-1062 - Court of Appeals, 9th Circuit 2007 which states:

> "For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA. **But as important as this goal is to disabled individuals and to the public, serial litigation can become vexatious when, as here, a large number of nearly-identical complaints contain factual allegations that are contrived, exaggerated, and defy common sense. False or grossly exaggerated claims of injury, especially when made with the intent to coerce settlement, are at odds with our system of justice**, and Molski's history of litigation warrants the need for a pre-filing review of his claims. *Molski v. Evergreen Dynasty Corp.*, 500 F. 3d 1047, 1061-1062 (emphasis added)

Plaintiff here fits the precise pattern of Harris and also Molski in his method of operation. While he did prevail and is entitled to apply for fees pursuant to 42 U.S.C. 12205, the court has the discretion to temper those fees to proportionality.

In ordering that Plaintiff obtain a pre filing order due to abusive practices under the ADA the *Molski* court described the inappropriate actions that led to the pre filing order being issued and stated:

> "The district court imposed a pre-filing order on the Frankovich Group similar to the order that it had imposed on Molski. Id. at 926. In its decision, the district court first observed that in 2004 the Frankovich Group filed at least 223 nearly identical lawsuits in the Northern and Central Districts of California, that the complaints all stated an ADA claim and the same four claims under California state law, that the damages requested in each case were identical and that, **other than superficial alteration of the names and facts, the complaints were textually identical** down to the typos. Id. The district court also noted that plaintiffs represented by the Frankovich Group would **often file multiple complaints regarding similar or identical injuries sustained at multiple establishments on a single day**. See id. at 926-27. The district court noted that one-third of the suits were against ethnic restaurants and commented that "such establishments are seen as **easy prey** for coercive claims." Id. at 926." *Molski v. Evergreen Dynasty Corp.*, 500 F. 3d 1047, 1052-1053

Here, Plaintiff has filed over 134 nearly identical lawsuits all stating ADA claims and the same state law causes of action as Molski. Here too were multiple suits for similar or identical injuries at multiple establishments on the same day.

1    While this is not a request for a pre filing order, the court can look at these

2    factors in assessing the reasonableness of attorney's fees, and as in the 11th

3    District cases discussed below, simply decline to exercise its jurisdiction to

4    award fees. At least the fees should be reduced to a reasonable and proportional

5    amount based on the abusive nature of the Plaintiff's serial filings.

6    *Molski* is eerily on point when it further states:

7    "We acknowledge that Molski's numerous suits were probably meritorious **in part** — many of the establishments he sued **were likely not** in

8    compliance with the ADA. On the other hand, the district court had ample basis to conclude that Molski **trumped up his claims of injury.** The

9    district court could permissibly conclude that Molski used these lawsuits and their false and exaggerated allegations as a harassing device to extract

10    cash settlements from the targeted defendants because of their noncompliance with the ADA. In light of these conflicting considerations

11    and the relevant standard of review, we cannot say that the district court abused its discretion in declaring Molski a vexatious litigant and in

12    imposing a pre-filing order against him." *Molski*, supra at 1062.

13    While this establishment may not have been in full compliance it is likely

14    that Love used this lawsuit and its exaggerated claim of damage to harass the

15    Defendants into settlement. While he prevailed, the court must take the serial

16    nature of the lawsuit, where pleadings are used and reused with the same

17    allegations, and all of the discovery and motion pleadings are reduced to

18    automated forms, into account when evaluating reasonable fees.

19    1C.   Fees Must Not Produce Windfalls to Attorneys.

20    "We agree with petitioners that Congress intended that statutory fee awards be "adequate to attract competent counsel, but . . . **not produce**

21    **windfalls to attorneys.**" Senate Report, at 6.*" Riverside v. Rivera*, 477 US 56, 581 - Supreme Court 1986

22

23    Here, Plaintiff seeks a windfall based on his boiler plate lawsuit, routine to

24    a firm that asserts they have filed over 3,000 such cases, where no discovery was

25    propounded by Defendants, no trial was held, the Summary Judgment pleadings

26    were virtually identical to Summary Judgment pleadings used by this Plaintiff

27    with this counsel over 100 times before in this District.

28    **Memorandum of Points and Authorities Opposing Fee Motion**    -4-

1

2

3

4

5

6

Add to it that the precise scheme that this Plaintiff employs has been recognized by this District as being abusive in cases where they found similar Plaintiffs to lack standing and to be vexatious litigators. There is no reason to similarly consider the serial nature of the Plaintiff's filings that reduces the cost of Plaintiff's litigation, the relatively slight violation uncovered and the simple issues before the court in this case.

7

8

9

10

11

12

13

"The scheme is simple: An **unscrupulous law firm** sends a disabled individual to as many businesses as possible in order to have him or her aggressively seek out all violations of the ADA. Then, rather than simply informing a business of the violations and attempting to remedy the matter through conciliation and voluntary compliance, a lawsuit is filed, requesting damage awards that could put many of the targeted establishments out of business. Faced with costly litigation and a potentially drastic judgment against them, most businesses quickly settle. Id. at 1030 (internal quotation marks and citation omitted); see also Rodriguez v. Investco, L.L.C., 305 F.Supp.2d 1278, 1282 (M.D.Fla.2004) (**"The current ADA lawsuit binge is . . . essentially driven by economics — that is, the economics of attorney's fees**.")*." Skaff v. Meridien North America Beverly Hills, LLC*, 506 F. 3d 832 fn. 13 - Court of Appeals, 9th

14

15

16

17

18

Defendant contends that the amount sought by Plaintiffs must be recognized as the fruit of this unscrupulous scheme. The hourly rates sought by three of the five counsel should be reduced to $300.00 per hour and the unnecessary time spent as identified in the Defendants Table be deleted.

19

20

21

Argument 2

THE MIDDLE DISTRICT OF FLORIDA STATED THEY WOULD REFUSE FEE AWARDS TO PREVAILING PARTY SERIAL FILERS OF ADA CLAIMS

22

23

24

25

The court reduced a fee request and stated that absent the Defendant's acknowledgment of some obligation would have awarded zero to a serial prevailing serial filer in *Ass'n for Disabled Amer. V. Integra Resort Man.*, 385 F. Supp. 2d 1272 - Dist. Court, MD Florida 2005 which states:

26

27

"Moreover, Congress had laudable purposes for the ADA. Congress did not mandate an award of fees, but rather provided that the Court "in its discretion may allow the prevailing party ... a reasonable attorney's fee,

28

1   including litigation expenses and costs." 42 U.S.C. § 12205 (italics
2   supplied). **Congress would never have intended for a court to grant
    $147,366.34 to a professional pawn in an ongoing scheme to bilk
    attorney's fees from hotel owners, particularly where a pre-suit letter
3   to the hotel owners would have achieved the same result as multiple
    consolidated lawsuits**. This **Court would exercise its discretion under
4   42 U.S.C. § 12205 to award no attorney's fee**, no litigation expenses,
    and no costs. Defendants Integra and Enclave, however, concede that
5   $20,686.30 is "reasonable" for attorney's fees and expenses owed under the
    settlement agreement."*Ass'n for Disabled Amer. V. Integra Resort Man*.,
6   385 F. Supp. 2d 1272, 1298-1299

7   Here, there is no question that Love is a 'professional pawn in an ongoing

8   scheme to bilk attorney's fees...' and it is not likely that Congress intended that a

9   litigation such as this to result in an attorney fee award more than 500% greater

10  than the judgment against a small business that was in substantial compliance.

11                              Argument 3

12  THE COURT MUST APPLY THE KERR FACTORS TO DETERMINE THE
                LODESTAR AND THEN ADJUST PER THE FACTORS
13
14  "The Ninth Circuit utilizes the "lodestar" approach for assessing
    reasonable attorney fees, where the number of hours reasonably expended
    is multiplied by a reasonable hourly rate. Gonzalez v. City of Maywood,
15  729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc.,
    523 F.3d 973, 978 (9th Cir. 2008). The court then may adjust the lodestar
16  upward or downward based upon a variety of factors. *Gonzalez v. City of
    Maywood* 729 F.3d 1196, 1202 (9th Cir. 2013).
17
18  "It is the prevailing party's burden to submit billing records to establish
    that the number of hours requested **are reasonable**. Gonzalez, 729 F.3d at
19  1202. The court should **exclude hours that could not reasonably be
    billed to a private client**, such as hours that are excessive, redundant or
20  unnecessary. McCown v. City of Fontana, 565 F.3d 1097, 1101 (9th Cir.
    2009); Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992). The
21  district court may reduce the hours by 1) conducing "**an hour by hour
    analysis of the fee request**," and excluding "**those hours for which it
22  would be unreasonable to compensate the prevailing party**[;]" or 2)
    "when faced with a massive fee application the district court has the
23  authority to make across-the-board percentage cuts either in the number of
    hours claimed or in the final lodestar figure as a practical means of
24  [excluding non-compensable hours] from a fee application."" *Gonzalez*,
    (supra) 729 F.3d at 1203 (quoting Gates, 987 F.2d at 1399). (emphasis
25  added)

26  "In determining a reasonable fee, the Court takes into account the factors
    set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.
27  1975): (1) the time and labor required, (2) the novelty and difficulty of the

28              **Memorandum of Points and Authorities Opposing Fee Motion**              -6-

questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases (hereinafter referred to as the "Kerr factors")." *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).

3A.    Application of the Kerr Factors Compels Reduction.

(1) The time and labor required: Here, as explained and documented by the Declaration of Gary Harrison, the pleadings and discovery used in this case are boilerplate pleadings used for the many similar cases with allegations of parking lot signage and handicapped violations. Completing the forms was clerical in nature. The time and labor, due to the efficient mill set up here minimizes the time and labor required. As explained in the Declaration of Gary Harrison, the Defense did not propound discovery. there were no depositions, there were no discovery disputes, the Motions responded to, for consolidation and to stay case and for an early ENE were routine for this plaintiff to respond to.

(2) The novelty and difficulty of the questions involved: This plaintiff has filed over 134 similar law suits, mostly in this district. Virtually all of the lawsuits use the same boilerplate pleadings all the way from Complaint through Fee Motion. There is nothing novel or difficult for an attorney who claims to have been counsel in over 3,000 such cases.

(3) The skill requisite to perform the legal service properly: There is no question that Plaintiff's counsel is skilled at presenting these cases. The cases are presented in a manner described by the Justices above. The Federal Cause of Action is attached to state court causes of action to circumvent the Federal lack of monetary compensation. It is a formula followed by as the Justices describe as unscrupulous attorneys. However, the actual damages would not reach the small

**Memorandum of Points and Authorities Opposing Fee Motion**                    -7-

1  claims court limit in California. As the cases above note, the only thing at stake is

2  Plaintiff's attorney's fees. After the first few thousand similar cases with the

3  same forms, the skill level is pedestrian.

4  (4) The preclusion of other employment by the attorney due to acceptance

5  of the case: Based on the Plaintiff's Index of this court, this case did not preclude

6  other employment by this counsel. As noted, two other identical cases were filed

7  on the same day from the same sad shopping spree.

8  (5) The customary fee: Here, there are no fees charged to clients who act as

9  the court described above, as pawns in this unscrupulous scheme. The customary

10  fee mentioned in the cases from circa 2007 note the usual settlement was about

11  $5,000,00 at that time.

12  (6) Whether the fee is fixed or contingent: The fee here is contingent.

13  (7) Time limitations imposed by the client or the circumstances: There

14  were no unusual time limits other than the statute of limitations.

15  (8) The amount involved and the results obtained: The amount of monetary

16  relief was $4,000.00 for which counsel seeks $30,000.00 in fees. The results

17  obtained were not extraordinary.

18  (9) The experience, reputation and ability of the attorneys: The lead

19  counsel are highly experienced. Their reputation in general as serial filers of

20  these cases  as noted in the cases cited above as unscrupulous. There lawsuits are

21  described by the justices of this Circuit as schemes. But they are good at what

22  they do.

23  (10) The "undesirability" of the case: There was nothing undesirable about

24  this case.

25  (11) The nature and length of the professional relationship with the client:

26  They have represented Love in over 134 similar cases.

27  (12) Awards in similar cases: Cited above is the case from the Florida

28  **Memorandum of Points and Authorities Opposing Fee Motion**                    -8-

1   Middle District where the court was willing to exercise its discretion and deny

2   fees to a serial filing ADA prevailing plaintiff. In that case cited above, the court

3   drastically reduced the requested award to the amount Defendant reasonably

4   demonstrated was correct. Further the concurrent Request for Judicial Notice,

5   request number 52 Langer v. Otoniel Tarin 8:14-cv-01674-DOC-AN (EC-1

6   Complaint; EC 17 Fee order for $3,570.00 for this counsel on Default Order and

7   Request for Judicial Notice number 50 - Michael Tate v. Southcoast Automotive

8   Liquidators, Inc. SACV   14-1748-JLS (JPRx) EC 14:page 13 of 14 setting

9   Default Fees in similar default case at $600.00 with attorney Mark Potter counsel

10   for Plaintiff June 3, 2015. The fees for similar default cases is $600.00 and

11   $3,570.00. That is a more realistic view of the value of these cases based on

12   similar awards. Of course, this was not a default, but it was not 200 times harder.

13        Here, application of the Kerr factors supports reduction of the rates for

14   three of the counsel and reducing the hours line by line as noted in the

15   Defendants' Table of Specific Objections.

16        3B.    <u>The $425.00 Hourly Rate Requested for Potter and Ballister and the</u>

17   <u>$350.00 Per Hour for Phyl Grace Are Not Reasonable Because Those Rates Are</u>

18   <u>Not Based on What Fee Paying Clients Pay.</u>

19        Here, five (5) attorneys submitted billing for this case. Defendant objects

20   to the hourly rate of $350.00 per hour requested by Phyl Grace and to the hourly

21   rate of $425.00 requested by Raymond Ballister and Mark Potter. Defendant does

22   not object to the hourly rate of $250.00 for Dennis Price or the $200.00 per hour

23   for Amanda Lockhart. For the reasons explained below, Defendant contends that

24   the reasonable rate for Potter, Ballister and Grace based on the fair value of their

25   services is $300.00 per hour.

26        The Declaration submitted by Plaintiff and the billing with Plaintiff's rates

27   submitted in support of his Motion do not demonstrate that the rates are based on

28        **Memorandum of Points and Authorities Opposing Fee Motion**     -9-

rates paid by actual **fee paying** clients. Instead, the rates alleged are rates charged

to opposing parties in fee motions and as such are not the measure of the value of

their services. There must be proof that those rates are paid by fee paying clients.

The Plaintiff's counsel, as serial filers of ADA cases whose scheme is described

above in detail in court opinions involving similar Plaintiffs, do not charge their

clients an hourly fee. They depend of forced settlements or court fee awards for

their compensation. Thus, the rates charged are not those charged to fee paying

clients as required.

> [A]ffidavits reciting the precise fees that attorneys with similar qualifications have received **from fee-paying clients in comparable cases** provide prevailing community rate information. Recent fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate." National Ass'n, of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, (C.A.D.C., 1982).

> "The district court may also reduce the reasonable hours awarded if "the number [of compensable hours] claimed by counsel include[s] hours that were **unnecessary, irrelevant and duplicative**." quoting Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994))." Jones v. Eagle-North Hills Shopping Centre, LP, 478 F. Supp. 2d 1321, 1325-1326 - Dist. Court, ED Oklahoma (2007) (emphasis added)

Here, the Plaintiffs do not have any **"fee-paying clients in comparable cases"** upon which to base their fees. Thus the court must use its own judgment as to the fair value of the three (3) disputed Plaintiff's hourly counsel fees.

> "Hensley v. Eckerhart, 461 U. S. 424 (1983), directed lower courts to make an initial estimate of reasonable attorney's fees by applying prevailing billing rates to the hours reasonably expended on successful claims. And we have said repeatedly that "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours **reasonably** expended on the litigation times a **reasonable** hourly rate." Blum v. Stenson, 465 U. S. 886, 888 (1984). The courts may then adjust this lodestar calculation by other factors." *Blanchard v. Bergeron*, 489 US 87, 94 - Supreme Court 1989

The Declaration of Gary Harrison filed in the case captioned Love vs.

Ocampo[1] 5:15-cv-00034 (EC- 42:6) wherein Defendant filed a motion for

---

[1] **The Guillermo Ocampo in this case is the Father of the Guillermo M. Ocampo in the 00034 case.**

**Memorandum of Points and Authorities Opposing Fee Motion**     -10-

1   Attorney's Fees based on alleged bad faith of the Plaintiff is based on the rate of

2   $300.00 per hour because that is what fee paying clients in comparable cases

3   paid. As Defendants, Harrison had to charge the going rate for defense of small

4   business owners. The total fees expended by Harrison in winning that case were

5   $14,280.00. That case was almost identical to this case as noted above. All of

6   Plaintiffs pleadings and discovery were almost identical so the time spent was

7   comparable. Harrison's Declaration discloses that he charged $300.00 per hour

8   for this case also. Three Hundred Dollars per hour is a more accurate measure of

9   the prevailing hourly rate paid by **fee paying clients**. This does not mean to

10  disparage the skills and experience of the three counsel in dispute. They are

11  skilled and efficient. They are so efficient that they have created boiler plate

12  template forms that reduce these cases to assembly line justice. While that is

13  commendable as a law business practice, it does reduce the actual value of each

14  routine case because most of the work is copied from templates developed for

15  alleged parking lot violation cases. The reasonable value is reduced.

16      Further, as noted in the Table of Specific Objections to Plaintiff's Request

17  for Fees, there were charges that were "unnecessary, irrelevant and duplicative"

18  and Defendants request the court omit those charges also.

19      Defendants understand that the Plaintiffs are entitled to an award and that

20  their services are quite valuable and they have great expertise. But Defendant

21  contends that their rates over $300 per hour are not the rates that would be

22  charged to fee paying clients and also that some of the charges, as specifically

23  identified in the Defendants' Table of Specific Objections are unnecessary,

24  irrelevant and duplicative for the reasons explained in the Table.

25                              Conclusion

26      Plaintiffs are entitled to a reasonable fee based on the fair value of their

27  services based on rates that fee paying clients pay for similar cases, which is

28          **Memorandum of Points and Authorities Opposing Fee Motion**          -11-

1  $300.00 per hour for Grace, Ballister and Potter and the others as requested. The

2  fees are limited to the time reasonably necessary. The Table of Specific

3  Objections states the time that Defendants contend is unreasonable and the time

4  that the Defendant concedes would be reasonable.

5      Based on the computations in the Table of Specific Objections, the

6  reasonable fee award for Plaintiffs herein is $9,535.00 plus the reasonable time

7  spent Replying to this Response if desired. The $300.00 per hour rate is further

8  supported by the amounts claimed by Defendants' counsel for a very similar case

9  where Defendant seeks bad faith fees from Love where Defendant submitted a

10  fee request of $14,280.00 and also by the Defendants' fees in this case which

11  were similar. And the Defendant did not have boilerplate forms to use to

12  facilitate the case as the Plaintiff did.

13      Other courts in this and other districts have identified and noted the harm

14  of these schemes and decline to award fees or reduce the fees drastically from the

15  amounts requested. The courts have denied standing to such plaintiffs based on

16  the lack of credibility of their allegations and have declared similar plaintiffs

17  vexatious. Defendants ask simply that the court use its discretion to limit the rate

18  to a reasonable rate and to reduce the unnecessary identified charges and order

19  that the Plaintiff is entitled to $9,535.00 plus reasonable time to prepare a Reply

20  to this Opposition, as attorney's fees.

21  Date: November 13, 2015

22                          Law Offices of Michael A. Scafiddi, Inc.

23                          By: GARY HARRISON, ESQ.
                            /s/ Gary Harrison, Esq.
24                          GARY HARRISON, ESQ.
                            Law Offices of Michael A. Scafiddi, Inc.
25                          401 Arrowhead Ave.
                            San Bernardino, CA 92401
26                          (909) 381-1000
                            Michael@scafiddilaw.com
27                          Gharrisonsxb@gmail.com

28          **Memorandum of Points and Authorities Opposing Fee Motion**          -12-